

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-2007

# Ringwood Bd Ed v. J.

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5222

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ringwood Bd Ed v. J." (2007). *2007 Decisions.* Paper 92.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/92

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 05-5222

—————

RINGWOOD BOARD OF EDUCATION

v.

K.H.J. on behalf of K.F.J.,
                                    Appellant

—————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 03-cv-04636)
District Judge:  The Honorable Dennis M. Cavanaugh

—————

Submitted Under Third Circuit LAR 34.1(a)
November 30, 2007

—————

Before: BARRY, FUENTES, <u>Circuit Judges</u>, and DIAMOND,[*] <u>District Judge</u>

(Opinion Filed: December 12, 2007)

—————

OPINION

—————

BARRY, <u>Circuit Judge</u>

      Appellant K.H.J. appeals the District Court's reversal of a state administrative law

———————————

  [*] The Honorable Paul S. Diamond, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

judge's (the "ALJ") decision holding that the Ringwood Board of Education (the "Board") did not provide her son, K.J., with a "free appropriate public education" under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. We find that the District Court did not accord the ALJ's factual findings the proper level of deference and will reverse.

## I.

Inasmuch as we write primarily for the parties, we reprise only those facts that are helpful in our discussion of the case.

K.J. is a young boy who suffers from a learning disability primarily affecting his ability to read and write. K.J. has also been treated for bipolar disorder, attention deficit hyperactivity disorder, and adjustment disorder. Just prior to the start of the 2001-2002 school year, K.H.J. enrolled her then six-year old son in the first grade at Peter Cooper Elementary School in Ringwood, New Jersey after the Board's Child Study Team determined that his attention deficit hyperactivity disorder entitled him to special education and related services under the IDEA. The Child Study Team developed an individualized education program ("IEP") for K.J. and he attended Peter Cooper for the 2001-2002 school year. Following that school year, K.H.J., apparently upset with what she perceived to be a lack of academic progress on K.J.'s part, especially in the areas of reading and written expression, requested that the Board pay for K.J. to be placed in an out-of-district school that specializes in educating children with language based learning

2

disabilities.  The Child Study Team rejected the request, concluding that "Peter Cooper, with its enriched core curriculum content and intensive remedial program . . . is the most appropriate and least restrictive environment for [K.J.]"  (App. at A104.)  K.H.J. then filed a *pro se* request for mediation and a due process hearing.

The parties presented their cases to the ALJ in a hearing that spanned seven days and included live testimony from eight witnesses.  On August 18, 2003, the ALJ ruled that the Board had not provided K.J. with a free appropriate public education as required by the IDEA and ordered the Board to pay for K.J. to attend the Banyan School, a small private school located in Fairfield, New Jersey that teaches learning disabled students using the Orton-Gillingham approach to reading instruction.  The ALJ made thirty-two findings of fact in its fifty-one page opinion, including:

16. During the 2001-2002 school year K.J. experienced *negligible progress in his reading*.  He would have been considered a non-reader and writer by June 2002.
17. [In an IQ test administered in May 2002, K.J.] received a Full Scale IQ of 114 . . . . This represented a significant increase in his IQ from the test one year before and places K.J. in the above average IQ category.  This increase appears to be the result of a number of factors, *most prominently, the stability in his home life, therapy and changes in medication, which allowed him to be more focused and to concentrate better*.  Based on K.J.'s most current IQ testing, he should have the potential of performing at least in the average grade level in reading.

. . . .

27. The failure to bring K.J. up to grade level affects K.J.'s ability to perform in all subjects. . . .
28. The failure of K.J. to learn how to read and to progress to his proper grade level has effected [sic] him psychologically and provided an additional stressor to his already fragile psychological make up.

3

29.     K.J. is presently one to two years behind his grade level in reading and writing. He has not met all of the N.J. CORE Curriculum standards for kindergarten. In order for K.J. to come up to grade level, he requires intensive teaching using the Orton-Gillingham and similar multisensory techniques throughout the day. Peter Cooper School is not providing this program to K.J. and their proposed IEP does not envision such a program.

(App. at A1738-41) (emphases added.) The ALJ also stated that "it could be concluded that K.J. not only did not progress, but that he regressed, since the goals [established in his 2001-2002 school year IEP] were lowered [in his 2002-2003 school year IEP]." (Id. at A1745.)

The Board challenged the ALJ's ruling by filing suit in the United States District Court for the District of New Jersey. Relying solely on the administrative record, the District Court reversed the ALJ's decision and granted summary judgment in favor of the Board. After summarizing the facts of the case and this Court's IDEA case law, the District Court explained its reasons for reversing the ALJ in a single paragraph:

> I disagree with the ALJ's determination that Plaintiff failed to provide K.J. with an appropriate education because the evidence shows Ringwood conferred a meaningful educational benefit on K.J. The ALJ found K.J.'s education at Ringwood to be inappropriate largely because he could not read on his grade level. While K.J. may not have been reading at grade level at the time [of] the ALJ hearing, *he had made substantial progress with his reading and writing*. Although K.J. has an IQ score that indicates he has the potential to perform at grade level, he is also diagnosed as being bipolar, having ADHD, and as having weaknesses in reading and language arts. As discussed above, a school district is not required to maximize the potential of a disabled student. Instead, a district is only required to provide a "meaningful educational benefit" that is more "than trivial." K.J. showed improvement throughout his time in the Ringwood School District in many areas including reading and writing. *K.J. entered*

4

*the first grade with an IQ of 94, behavioral problems, attention difficulties, and reading and writing problems. He showed improvement in all of these areas by the end of the year.* It may be true that his academic potential could be maximized in an out of district placement. However, so long as Plaintiff provides K.J. with a meaningful educational benefit, Plaintiff has met its burden. Plaintiff has done so here. Therefore, this Court disagrees with the ALJ's determination that Plaintiff failed to provide K.J. with an adequate education.

(Id. at A12-13) (citations omitted) (emphases added.) The District Court's analysis cited to a single piece of documentary evidence to support its finding that K.J. "had made substantial progress with his reading" – the IEP prepared for K.J. by the Board's Child Study Team for the 2002-2003 school year.[1] The District Court did not cite to any evidence, documentary or otherwise, to support its finding that the Board was responsible for K.J.'s increased IQ score.

## II.

When reviewing administrative decisions concerning a school district's compliance with the IDEA, this Court has declared that

> the District Court must . . . afford "due weight" to the ALJ's determination. Under this standard, factual findings from the administrative proceedings are to be considered prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why. In addition, if a state administrative agency has heard live testimony and has found the testimony

---

[1] The District Court's opinion actually references a diagnostic report and recommendation from the Hackensack University Medical Center's Institute for Child Development dated June 6, 2002, but this document does not mention any progress made by K.J. However, based on the District Court's discussion of the 2002-2003 IEP earlier in its opinion (App. at A7-8), the Court agrees with the parties that the District Court likely meant to cite to this document instead of the Hackensack report.

of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight. Specifically, this means that a District Court must accept the state agency's credibility determinations unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion. In this context, the word "justify" demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court.

*Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (citations and quotations omitted).

In this case, the ALJ concluded, after hearing conflicting testimony on the issue, that K.J. "experienced *negligible progress* in his reading" during the 2001-2002 school year (A1738) (emphasis added) and that at the end of the 2002-2003 school year, K.J. was still "one to two years behind his grade level in reading and writing." (A1741.) The ALJ also heard conflicting testimony on the reason for the significant increase in K.J.'s IQ score between 2001 and 2002, and ultimately agreed with Dr. Brand that the Board did not deserve a substantial amount of credit for that increase. The District Court rejected both of these important factual findings without citing to any evidence in the record that justified reaching a contrary conclusion.

While, of course, "we may still uphold [the District Court's] decision if correct under the appropriate standard of review," *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 271 (3d Cir. 2003), our review of the record has revealed little if any evidence justifying the District Court's decision to reject the ALJ's factual findings. While the IEP prepared for K.J. for the 2002-2003 school year does indicate that he had made significant

6

progress during the 2001-2002 school year, reliance on this document is problematic because it was prepared *by the Board* and is the root of the present litigation.

We are well aware that the IDEA does not require school districts to "maximize" the potential of their disabled students. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 198 (1982). However, the IDEA "'calls for more than a trivial educational benefit' and requires a satisfactory IEP to provide 'significant learning,' and confer 'meaningful benefit.'" *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999) (citations omitted) (quoting *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 182, 184 (3d Cir. 1986)).

It is undisputed that K.J. is a child with "above average" intelligence. In consideration of this fact and based on the testimony elicited at the administrative hearing, the ALJ made a factual finding that K.J. had the "potential of performing *at least* in the average grade level in reading." (App. at A1738) (emphasis added.) Contrary to the Board's assertion, expecting a child with "above average" intelligence to perform in the "average" range hardly qualifies as "maximizing" that child's potential. We have previously stated that "[w]hen students display considerable intellectual potential, IDEA requires 'a great deal more than a negligible benefit.'" *Id.* (quoting *Polk*, 853 F.2d at 182). Because K.J. had only made "negligible progress" during the 2001-2002 school year and was still one to two years behind grade level after the 2002-2003 school year, we find that the ALJ properly concluded that the Board failed to provide K.J. with an appropriate

education under the IDEA.  We also find that the Board's inability to provide K.J. with an appropriate education within its district[2] required them to pay for K.J. to attend an out-of-district school that was capable of providing him with an appropriate education. *Ridgewood*, 172 F.3d at 249 (stating that the "IDEA requires that disabled students be educated in the least restrictive *appropriate* environment").

**III.**

For the foregoing reasons, we will reverse the District Court's grant of summary judgment in favor of the Board and will remand with instructions to enter judgment in favor of K.H.J. on the issue of liability and for a determination of the amount of fees and costs owed to her by the Board.

---

[2] The ALJ specifically found that, "other than Ms. Tanzola, the . . . teachers at Peter Cooper [were] not prepared to implement the Orton method of teaching for K.J."  (Id. at A1741.)  The ALJ ultimately concluded that "[w]hile it would be better if K.J. could receive a Free and Appropriate Education in District, the school has failed to provide FAPE and there is no indication that they will adjust their program to provide same." (App. at A1747.)